Marcus Kuhlman, Appellant, *v.* Edwin S. Smeltz, Mayor, and William Riddle, Chairman of the Finance Committee of the Councils of the City of Lancaster.

*Assessors—County assessor—Elections—Municipalities—Cities of the third class—Public officers—Statutes—Acts of April 5, 1867, and May 9, 1889.*

There is not and never has been in Pennsylvania a county assessor by name, and the act of May 9, 1889, P. L. 139, entitled " An act to authorize the triennial election of the county assessors in cities of the third class, " and providing that the voters of each ward shall elect a " properly qualified person, according to law, to act as county assessor in each of said wards under existing laws," did not establish a new office of county assessor, or provide for the election of a new officer of that name, but left the duties of making the assessment for county purposes in the same hands where they were before, and merely lengthened the term of the officials to three years; and it did not interfere in any other way with the act of April 5, 1867, P. L. 783, providing for the election in the city of Lancaster of " one person as assessor for state, county and city purposes."

Argued May 23, 1895. Appeal, No. 68 July T., 1895, by plaintiff, from judgment of C. P. Lancaster Co., Trust Book No. 15, p. 372, on verdict for defendants on case stated. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Case stated to determine the right of Marcus Kuhlman to the office of county assessor.

The case stated was as follows:

The following facts are admitted by the parties to the above, which is an amicable action for the determination of a matter of law to be submitted to the court for its consideration, determination and judgment:

1. Edwin S. Smeltz is the mayor of the city of Lancaster, and William Riddle is the chairman of the finance committee of the councils of said city, and they have the custody of the assessors' books for the assessment of real estate for city tax purposes, and to them is committed the authority to hand said books to the persons lawfully authorized to make the assessment of property for city tax purposes.

2. At the February election of 1893 Marcus Kuhlman was

elected assessor of the Seventh ward in the city of Lancaster, for the period of three years and was duly qualified and commissioned as such. On March 9, 1895, he took an additional oath of office before Jeremiah Rife, an alderman of the city of Lancaster, which oath is appended hereto and made a part of this case stated.

3. At the February election of 1894 James Reardon was voted for in the Seventh ward of said city as " city assessor," and received a majority of all the votes cast for said office and duly qualified as " city assessor."

4. All special and local acts relating to the city and county of Lancaster, to the powers and duties of city and county assessors, and all general acts relating to the office of assessor which may be cited by counsel for argument are to be considered as evidence.

5. The charter of Lancaster city, the amendments thereto; the act of April 18, 1867, sections 29, 783, thereof, as printed in the last digest of the ordinances of the city of Lancaster, and the acts of assembly relating thereto, page 29; the act of February 14, 1889, P. L. 7, relating to assessors in boroughs and townships; the act of May 8, 1889 P. L. 133, amending the aforesaid act, and the act of May 9, 1889, authorizing the triennial election of county assessors in cities of the third class, are admitted as evidence.

6. Marcus Kuhlman, elected as county assessor aforesaid, and James Reardon, elected as city assessor, as aforesaid, have each applied to the defendants for the assessment book and for authority to make the assessment of property for city tax purposes in the said Seventh ward, and the defendants being unable to decide which of said applicants is entitled to said book and to make the said assessment, have declined and refused to give said book to either ; whereupon it has been agreed by all interested that this action shall be framed and these facts submitted to the court for its decision in the premises.

If the court shall be of the opinion, upon the facts admitted and stated that Marcus Kuhlman, by virtue of his election as assessor generally for a period of three years, said term of office not yet having expired, is, under the law, entitled to make the assessment of property in the Seventh ward for city tax purposes, the court to issue a peremptory mandamus against the

defendants, directing them to forthwith deliver over to the said Marcus Kuhlman the said assessment book with all necessary evidence of authority in him, the said Marcus Kuhlman to make said assessment and to return the same to the finance committee of councils, and defendants to pay the costs of this proceeding.  If the court shall be of the opinion that the right to make such assessment is not in the said Marcus Kuhlman, but is in the said James Reardon, by virtue of his election as city assessor, then the court shall enter judgment in this proceeding against the plaintiff and for the defendants, and decree that the plaintiff shall pay the costs of this proceeding.

It is admitted and conceded that the whole question to be determined in this proceeding is, whether or not the county assessors, elected triennially, as such, for a period of three years, have the right to make the assessment of real estate in the city of Lancaster for city tax purposes, and whether the office of city assessor has been abolished, or whether the office of city assessor, to be filled at an annual election, exists, and the person elected thereto annually has the right of making a separate city assessment for city tax purposes.

The court, in an opinion by BRUBAKER, J., entered judgment for defendant on case stated.

*Error assigned*, among others, was entry of judgment as above.

*W. U. Hensel, J. Hay Brown* with him, for appellant.—The act of 1867 expressly abolished the office of city assessor in Lancaster.  How could this abolished office be recreated without express legislation to that effect?  An office once abolished cannot be revived, recreated and renewed by implication or inference.  To revive an office thus would not only be in contravention of all sound legislative procedure, but it would be in itself local legislation of the most obnoxious sort.  It is manifest that the only purpose of the act of May 9, 1889, was what is expressed in its title " to authorize the triennial election of county assessor in cities of the third class "—that is, to extend the term of these officers from one to three years ; just as previously, at the same session of the legislature, the terms of township and borough assessors had been extended from one to three years.

In Com. v. Samuels, 163 Pa. 284, it was decided that an act entitled " An act creating the office of county controller " in certain counties, which transferred to the county controller the functions of county auditors and in effect abolished the office of county auditor, was unconstitutional in that no purpose to abolish this office was expressed in the title. Yet in the present case it is proposed that an act entitled " an act to authorize the triennial election of county assessors in cities of the third class " shall be construed to: (1) deprive the county assessors in Lancaster city of their former right to make the city assessments ; (2) establish and create the separate and distinct office of city assessor, expressly abolished by the act of 1867. If such loose and liberal construction is to prevail what shall become of the repeated declarations of the Supreme Court that the title of an act shall give direct notice of its provisions and their effect : Phœnixville Road, 109 Pa. 44; Ridge Ave. Ry. Co. v. City, 124 Pa. 219; City v. Ridge Ave. Ry. Co., 142 Pa. 484.

*J. W. Brown,* city solicitor, *John E. Snyder* with him, for appellees.—A general act affects a special act only when it appears to have been the intention of the legislature so to do. If they can be construed to stand together they must be so construed.: McCleary v. Allegheny County, 163 Pa. 578 ; Endlich on Interpretation of Statutes, sec. 223.

The plain intention of the legislature of 1889 was to provide for the assessment in cities of the third class not already provided for : Act of May 9, 1889, P. L. 139; Act of May 23, 1889, P. L. 277.

Lancaster city was not incorporated under the act of May 23, 1874, but by act of March 20, 1818, P. L. 207. Nor has it ever accepted the act of 1874, as provided in section 57 thereof, and it is still working under the charter of 1867.

It is contended that the county assessors have not, and never had, the right to make city assessments, for the act of 1867 says nothing about county assessors, and if the act of 1889 interferes in any way with the act of 1867 it is only so far as the county assessment is concerned, and the person elected assessor under the act of 1867 must make the city assessment, not as city assessor, but as assessor.

OPINION BY MR. JUSTICE MITCHELL, October 7, 1895:

An officer or tribunal to put an official valuation on property which is called upon to contribute to the public revenue, is a necessary part of the equipment of every municipal body having the power of taxation, and such officer has been known in Pennsylvania from the earliest times as an assessor. The title occurs in the first act of the laws made by Governor Fletcher with the advice and consent of the council and representatives in general assembly at Philadelphia in 1693: The Duke of Yorke's Laws, p. 221, 222, and has been in use continuously since that time.

The act April 11, 1799, 3 Sm. 393, 4 Dall. Laws, 508, directs that the "citizens of every ward, township and district within the city of Philadelphia, and the several counties of the state, shall annually . . . . elect one citizen to be an assessor for the term of one year, and in 1801 and every third year following two other citizens to be assistant assessors for the term of one year," the provision for the latter being evidently with reference to the increased labor and importance of the triennial assessment on which the rate for the county levy was to be fixed.

This system remains in force as to its chief features, to the present day. The act of April 15, 1834, P. L. 511, relating to county and township rates and levies, directs the county commissioners in 1834 and every third year thereafter to issue their precepts "to the assessors of the respective townships, wards and districts," and another act of the same date, April 15, 1834, P. L. 552, expressly includes annual assessors and triennial assistants among township officers. Assessors and assistants for boroughs are recognized and their election provided for by the general borough act of April 3, 1851, P. L. 325.

We have thus gone somewhat back of the actual inquiry in the present case, to get as clear a view as practicable of the state of the law when the act of 1867 was passed. Its general features are as above noted, and the only special provision for Lancaster that we find in Mr. Giles D. Price's very useful Index to Local Legislation in Pennsylvania, is an act of April 18, 1853, sec. 9, P. L. 531, providing that the voters of the several wards shall elect an assessor for each ward.

The act of April 5, 1867, P. L. 783, is an amended charter for the city of Lancaster, and the twenty-ninth section provides

for the election by the qualified voters of each ward, of "one person as assessor for state, county, and city purposes;" declares there shall be no assistant assessors elected in said city, and repeals so much of any act as authorizes such officers so far as the same may apply to Lancaster; and closes with the enactment that "the office of city assessor is hereby dispensed with." The first observation to be made on this act is the specific dispensing with the office of city assessor. I have not been able to find any previous provision in regard to such officer. The most diligent search of the digests, on which we must rely in such investigations, fails to disclose any trace of his existence by statute, and if by local ordinance, the paper-books fail to give us any reference to it. This point will be taken up again later.

The general intent of the section is perfectly plain. It is to secure to the taxpayers of the city a uniform basis of assessment for city and county purposes, and incidentally to avoid the duplication of officers for identical duties. The section expressly provides for the presentation of the assessment to the city councils, for purposes of city taxation, and as the assessors are "to do and perform within their respective wards all the duties that by the usages and laws of this commonwealth are now enjoined upon the assessors and assistant assessors," they would of course receive the precepts and make return to the county commissioners for county purposes under the act of 1834 already mentioned.

The act of May 9, 1889, P. L. 139, is entitled "an act to authorize the triennial election of county assessors in cities of the third class," and provides in two short sections that the qualified voters of each ward shall elect a "properly qualified person, according to law, to act as county assessor in each of the said wards under existing laws," and vacancies shall be filled by the county commissioners.

The real question raised by this act is whether it is intended to create the office of county assessor in cities of the third class, or only to regulate the election to such office where it already existed. And here we are met by the same difficulty as in the act of 1867, the absence of any such office by name from the law. So far as our researches have informed us there is not and never has been in Pennsylvania a county assessor by name. The policy of the law has always been to keep the office con-

fined to small localities, with the manifest view of securing an officer who could bring to the discharge of his duties, a personal acquaintance with all the properties he was to assess. Accordingly, the act of 1799 above quoted prescribes the election of assessors in wards, townships and districts, and so far as appears this system has never been altered. The act of 1889 does not in terms provide for the election of a county assessor, but of a person "to act as county assessor," in this respect being less embarrassing than the act of 1867 which in express terms dispenses with the nonexistent office of city assessor. But the question remains, did the act create a new officer where none existed before, or did it merely use the popular designation of the officer, not with reference to the legal title of his office, but only to the duties to be performed, and was its purpose therefore only to regulate the election, i. e. to lengthen the term of the officer performing that function, whatever his formal title might be ? We are clearly of opinion that the latter was the whole purpose and scope of the act.

The objections to the first view are plain and weighty. As already said the election is not to be of a county assessor, but of a person " to act as " such, an indirect method of creating a new office, which would hardly be adopted in view of the fact that the office would be a departure from the settled policy of the state for a century. Then there is no direct prescription of his duties such as would be required in the creation of a new officer, and further, he is " to act as county assessor in each of said wards " showing that his duties, whatever his title, are only intended to be those of a ward officer.

Turning now to the other view we find that it relieves us of most of the difficulties suggested. In the first place it explains the apparent solecism in the act of 1867, and puts both acts in a clear light by showing that they used the terms " city assessor " and " county assessor," not as legal titles, but as the popular names of the officers who performed the respective functions of making assessments for city and county purposes. Next it relieves us of the necessity of holding that the legislature has made a new office in departure from the traditional policy of the state, by indirection only, and without prescribing its duties. The clause " elect a properly qualified person, to act as county assessor under existing laws, who shall serve

for three years," while indefinite and altogether inadequate as prescribing the duties of a new office, is sufficiently precise and comprehensive if only meant as an identification, by reference to his duties, of an existing officer whose term was merely to be lengthened.    That this was the purpose of the act is further corroborated by the correspondence in the form of expression with that used in several acts passed in the same session, the object of which was clearly nothing more than the extension of the term.    Thus the act of February 14, 1889, P. L. 7, is entitled " An act to authorize the election of assessors for three years in the several boroughs and townships of this commonwealth," and directs that the qualified voters of every borough and township and of each ward and district when they have been divided shall elect an assessor who shall serve for three years.    As these officers already existed in the same territorial divisions, and the act does not prescribe any new duties but merely directs that they are to " perform all the duties of assessors under the laws," it is plain that the only effect of the new act was to lengthen the term from one to three years. The same form was used and the same intent is manifest in the act of February 14, 1889, P. L. 6, in reference to constables.

We are therefore of opinion that the act of May 9, 1889, did not establish a new office of county assessor, or provide for the election of a new officer of that name, but left the duties of making the assessment for county purposes in the same hands where they were before, and merely lengthened the term of the officials, whatever their legal title, to three years.    It did not therefore interfere in any other way with the act of 1867.

Judgment reversed, and mandamus directed to be issued in favor of appellant as stipulated in the case stated.